**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>v.<br><br>Derick Lee Myron,<br><br>  Defendant. | No. CR-24-08050-001-PCT-MTL<br><br>**ORDER** |

Before the Court are the United States' four motions *in limine* to preclude or limit certain evidence. (Docs. 68, 82-84.) Defendant opposes all of them. (Docs. 90-93.)

**I.    KIDNAPPING ALLEGATIONS**

Defendant was arrested on May 2, 2024, and a Department of Family services investigation was initiated as to Defendant and N.H.'s children. (Doc. 90 at 3.) That investigation mentions that Defendant may have walked in on N.H. and M.Z. ingesting drugs. (*Id.*) On October 22, 2024, Defendant's father filed a Motion for Temporary Custody of the children in Navajo Nation Tribal Court. (*Id.*) The Motion alleges that the "[m]other has taken the children somewhere far from their home." (*Id.* at 4.) The tribal court issued an order granting the motion based on N.H.'s non-appearance at the proceedings, but it was later vacated once N.H. learned of the proceedings. (*Id.*) The government moves to preclude any evidence of the "custody situation of Defendant and N.H.'s children." (Doc. 82 at 3.)

The government argues that the dispute is not relevant under Federal Rules of

Evidence 401 and 402, and prejudicial under Rule 403. (Doc. 82.) Defendant states that the government relies solely on accusations made by the victims, and the victims' narratives are inconsistent and contradictory (Doc. 90 at 5.) Defendant specifically asserts that the evidence should be admissible to contest this assertion made by the government: "the defendant would come to N.H.'s home unannounced, refuse to leave, pick fights with N.H., and sometimes just surveil her home." (*Id.* at 6.)

The Court will grant the motion with respect to evidence of the proceedings before the Navajo Nation Tribal Court. Defendant's parents' accusations concerning the parental fitness of N.H. and M.Z. do not tend to make a fact of consequence more or less probable under Federal Rule of Evidence 401. The motion was made in the tribal court more than a year after the incident. The allegations in the motion are uncorroborated, and the tribal court's decision was later vacated. If there is any probative value, it is substantially outweighed by prejudice, since any evidence is likely to create mini-trials on the issue of parental fitness. Fed. R. Evid. 403. Evidence of the proceedings is precluded.

The Court will deny the motion to the extent it requests the Court to preclude additional evidence concerning Defendant and N.H.'s "custody situation." This additional evidence would consist of the Department of Family Services' investigation that was conducted a month after the incident on May 30, 2024, where the intake call and interview mention the possibility that N.H. and M.Z. were using substances. This evidence is less remote in time and consists of more than accusations made by Defendant's parents. The evidence is probative of Defendant's mental state if used to substantiate a theory that he was at N.H.'s residence at the time of the incident and on prior occasions because he believed N.H. and M.Z.'s behavior was endangering his children. The Court will reserve ruling on such evidence.

## II.   VICTIMS' CRIMINAL HISTORIES

The government moves to preclude evidence of the victims' criminal histories if Defendant does not lay the proper foundation. (Doc. 83.) Most of the victims have a criminal history. C.G. has three felony convictions prior to 2015, including taking a vehicle

1 without consent and second-degree robbery. (Doc. 83 at 3.) M.Z. has a 30-year-old felony conviction for grand larceny, several misdemeanor offenses, and numerous arrests, mostly involving DUI or theft-related incidents. (*Id.* at 4-5.) There is also a Tucson Police Department report concerning an April 2000 allegation that M.Z. sexually assaulted a minor. (*Id.* at 6-7.) N.H. was arrested in 2008 for misdemeanor assault and misdemeanor disorderly conduct. (*Id.* at 7.)

The government argues that Defendant must first make a prima facie showing of self-defense before introducing opinion or reputation evidence, or evidence of a victim's specific instances of conduct. (*Id.*) Defendant argues that the evidence is admissible to establish the state of mind element for a theory of self-defense, to attack the credibility of witnesses with prior acts that are probative of truthfulness, and to cross examine witnesses by contradiction. (Doc. 92.)

The Court finds that evidence of the victims' criminal histories carries a significant risk of prejudice. *See U.S. v. Comerford*, 857 F.2d 1323, 1324 (9th Cir. 1988) (affirming the district court's determination that the prejudicial harm outweighed the probative value of evidence of a victim's arrest for striking his wife). The Court will grant the motion and allow this evidence to be admitted only upon a proper showing, outside the presence of the jury, that any evidence sought to be introduced is admissible for the purpose asserted. This applies to evidence concerning the victims' criminal histories sought to be introduced for purposes other than establishing the state of mind for self-defense. *See* Fed. R. Evid. 607, 608(b). To the extent Defendant wishes to rely on prior acts, he must provide notice of his intent to introduce such evidence.

### III. TOXICOLOGY REPORTS

N.H. and M.Z. underwent a drug screening and alcohol test at the hospital immediately following the incident. (Doc. 84 at 1-2.) M.Z.'s report indicated a positive value for cocaine, opiates, and fentanyl. (Doc. 68 at 8.) N.H.'s report indicated a positive value for opiates, fentanyl, and oxycodone. (*Id.* at 9.) Both victims had blood alcohol contents above zero. (*Id.* at 8-9.) The government moves to preclude evidence of the

toxicology reports because "they do not indicate in any way that the victims were under the influence of alcohol or illegal drugs at the time of the shooting." (Doc. 84 at 3.) It further argues that N.H. and M.Z. were prescribed the painkillers that were flagged in the report, and the blood alcohol content is residue from a small quantity of alcohol during the night prior. (*Id.*) The government also moves to exclude any questioning concerning M.Z.'s cocaine use. (*Id.*)

The Court will not preclude evidence of the toxicology reports. A victim's intoxication at the time of the incident is relevant under Federal Rules of Evidence 401-03. *See Zucchella v. Olympusat, Inc.*, No. CV 19-7335 DSF (PLAx), 2023 WL 2633947, at *4 (C.D. Cal. Jan. 10, 2023) (finding that evidence of intoxication is relevant to a witness' credibility). The Court finds that a toxicology report that indicates the presence of a substance in an individual's blood tends to make it more probable that the individual was intoxicated by the substance in the hours that immediately proceeded the drug screening. The reports are therefore relevant under Federal Rule of Evidence 402. The fact that the results may be explained by the victims' prescription medications and prior use does not rise to the level of prejudice under Rule 403 that would justify wholesale exclusion. A jury can, without being misled, consider the reports alongside the context the government plans to elucidate.

The Court will generally preclude questioning on cross examination concerning M.Z.'s cocaine use that occurred prior to the time of the incident. Federal Rule of Evidence 608(b) permits a party to attack a witness' credibility based on prior acts that are probative of the character for truthfulness or untruthfulness. Prior substance use is not probative of a witness's credibility unless there is specific evidence linking the substance use to a motivation, bias, or interest in testifying. *U.S. v. Kizer*, 569 F.2d 504, 505-06 (9th Cir. 1978). There is no such link here. However, Defendant may introduce evidence of M.Z.'s prior cocaine use to directly contradict testimony under Federal Rule of Evidence 607. That is, evidence of prior cocaine use may be introduced if it is used to directly contradict an "expansive and unequivocal denial of involvement with drugs on direct examination." *U.S.*

*v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999). To the extent Defendant is able to provide adequate foundation for the evidence under Federal Rule of Evidence 607 and *Kizer*, the Court will allow such evidence to be introduced.

## IV.   EXPERT TESTIMONY

Defendant intends to offer expert testimony from Patrick Ronaldson, a professor of pharmacology at the University of Arizona, concerning whether two of the victims, N.H. and M.Z., were intoxicated at the time of the incident such that they could not accurately recall the events that occurred. (Doc. 68 at 8.) Mr. Ronaldson based his report on N.H. and M.Z.'s medical records from when they were treated immediately following the incident. (*Id.*) Based on the victims' BAC and drug screening results, the expert concluded that, at the time of the incident, N.H. and M.Z.'s BACs were 0.225% and 0.212%, respectively. (*Id.* at 8-9.) The victims tested positive for other drugs, including several that were prescribed. (*Id.*) He concluded that "within a reasonable degree of pharmacological probability, [the victims were] impaired by the effects of alcohol at 0730 hours on 04/29/2024 and, therefore, unable to accurately remember events associated with the shooting." (*Id.* at 9.)

The government argues as follows. Mr. Ronaldson does not possess relevant expertise because he is a professor in pharmacology. (Doc. 10-11.) He has no practical experience in toxicology, so he can testify generally on the effects of drugs and alcohol on memory, but he cannot draw conclusions from a toxicology report. (*Id.*) The expert report provides a conclusion, not analysis. (*Id.* at 11.) Mr. Ronaldson erroneously calculated the victims' BAC by dividing the mg/dL test result by 100 instead of 1000, leading to a gross overestimate of their intoxication. (*Id.*)

Defendant acknowledges the miscalculation but argues that it does not warrant excluding the entirety of the expert's testimony. (Doc. 93 at 1-2.) He emphasizes that the victim, M.Z., had cocaine in his blood. (*Id.* at 2-3.)

The Court will preclude Mr. Ronaldson's testimony to the extent it draws conclusions about or from the victims' blood content of drugs or alcohol at the time of the

incident. An expert must be "qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. As a pharmacology professor, Mr. Ronaldson is qualified to testify on the effects of drugs and alcohol, not to read drug screening reports. Moreover, Mr. Ronaldson's egregious miscalculation is not the result of "reliable principles and methods." Fed. R. Evid. 702(c). Mr. Ronaldson may testify only generally on the effects of drugs and alcohol on perception and memory.

## V.  CONCLUSION

**IT IS ORDERED** that the United States' Motion *in Limine* to Exclude Baseless Allegations of Kidnapping (Doc. 82) is **GRANTED IN PART AND DENIED IN PART**. Evidence of the proceedings before the Navajo Nation Tribal Court concerning the custody dispute between N.H. and Defendant's parents is precluded. Other evidence stemming from N.H. and Defendant's custody dispute is not precluded.

**IT IS FURTHER ORDERED** that the United States' Motion *in Limine* to Exclude Improper Evidence of Victims' Irrelevant Criminal Histories (Doc. 83) is **GRANTED**. Defendant must demonstrate the proper foundation, outside the presence of the jury before introducing reputation or opinion evidence, or evidence of a victim's prior acts, concerning a victim's criminal history.

**IT IS FURTHER ORDERED** that the United States' Motion *in Limine* to Exclude Irrelevant Evidence of Victims' Toxicology Records (Doc. 84) is **GRANTED IN PART AND DENIED IN PART**. Defendant may introduce evidence of the victims' toxicology reports. Evidence and questioning related to M.Z.'s prior cocaine use will be precluded unless it is used to directly contradict testimony or Defendant establishes a link between the cocaine use and some motivation, bias, or interest

**IT IS FURTHER ORDERED** that the Motion *in Limine* to Preclude Expert Testimony (Doc. 68) is **GRANTED IN PART AND DENIED IN PART**. Defendant's expert, Mr. Ronaldson, may testify only as to the general effects of drugs and alcohol on perception and memory.

**IT IS FINALLY ORDERED** that all rulings are subject to reconsideration at trial in light of the evidence and context then presented.

Dated this 15th day of January, 2026.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge